for the second district is now open. The Honorable Justice George Bridges presiding, along with Justices Susan F. Hutchinson and Donald C. Hudson. The case is number 2180536, People of the State of Illinois, Plaintiff Appellee v. James T. Abron, Defendant Appellant. Arguing for the Appellant, Josette Skelnick. Arguing for the Appellee, Barry W. Jacobs. Good morning. Are both parties ready to proceed? Yes. Yes, Your Honor. Josette Skelnick, you may proceed. Thank you. Good morning, Your Honors. Good morning, Counsel. May it please the Court, my name is Josette Skelnick with the Office of the State Appellate Defender. I am representing the Defendant Appellant, James Abron. Mr. Abron was convicted after jury trial of predatory criminal sexual assault, criminal sexual assault, and several counts of child pornography, and was sentenced to an aggregate term of 50 years imprisonment. We've raised two substantive issues in this appeal. First, whether the trial judge improperly barred Mr. Abron from introducing evidence that the complainant had taken nude photographs of herself to send to a boy on Facebook, rather than for a reason connected to the defendant. And secondly, whether plain error was committed when the trial judge, based on representations made by the state as to other crimes evidence that it intended to introduce, told the jury it would be hearing this evidence on the issue of the defendant's consciousness of guilt, but then the state, at the time it was given the opportunity to present this evidence, purposely failed to introduce it. I'd like to address the second issue first, and then if time permits, go back to the first issue. With respect to the second issue on the other crimes evidence, it's essentially an issue of prosecutorial misconduct. And looking at People v. Kleiner, the rule is that the state's failure to present evidence that promised the jury it would introduce is a reversible error when there's two factors present. First, that the failure to present the evidence is attributable to misconduct by the prosecutor. And second, that the defendant was substantially prejudiced as a result of the failure to introduce the evidence. And that we submit is what happened here. Prior to trial, the state filed a motion in limine seeking to admit evidence of an incident between KH's mother, Monica, and the defendant that took place shortly before KH made her disclosures of the alleged abuse at a hospital. The state was proposing to introduce testimony by Monica that she saw the defendant and KH coming out of the bathroom at the home. She confronted the defendant about it, and in response, Mr. Abram pushed her down, causing her to break her ankle. Judge Witt found that what was relevant, and in fact the only fact that was relevant, was that Monica had confronted the defendant, and that in response, he had pushed her, because he found that it was relevant as evidence of consciousness of guilt, and that it could come in for that purpose only. So, Ms. Kellnick, if I can interject just a few threshold questions here. So, the state asked, you know, to introduce the evidence. The court then proposes to give a limiting instruction, of course, which would be proper when it comes in at the end of the trial. The state doesn't present the evidence, ostensibly creating some error. As I understand it then, well, first of all, the defense attorney then did not move for a mistrial, correct? Greg, he asked for a curative instruction. A curative instruction. So, he approaches, asks for a curative instruction. The court agrees to give the curative instruction with the language that was, you know, approved by the defense attorney. So, that is given at the request of counsel, and with the language counsel wanted. Doesn't that impact on the viability of the error? Because the defense attorney actually requested the court to follow discourse of conduct, right? Well, yeah, I would say this. I think, had we just had the curative instruction, and what the judge said was, I told you before Monica testified that you were going to hear evidence of other conduct by the defendant. You never heard that evidence. So, disregard the instruction. So, his instruction was, don't consider the evidence that I told you you could only consider for a limiting purpose. Don't consider it for a limiting purpose. You didn't hear the evidence. I think if nothing else had happened after that, then we might be in the same kind of situation as what happened in Kleiner. In Kleiner, the prosecutor made reference to two guns that were found, or reference to two guns that were owned by the defendant, which were not part of the offense, in opening statements made that comment. But it was never mentioned again. So, the Supreme Court said, well, that was misconduct, because the prosecutor introduced information about evidence that was never presented, but it was never mentioned again. So, the defendant was in prejudice. So, I think the problem here is, the curative instruction sure was an attempt to cure the error in the prosecutor's intentional failure to admit the evidence. But then, the prosecution used that evidence during its closing argument, pretty much- If I may interject something here to go along with Justice Hudson's question. Given the curative instruction to the jury, and that the parties agreed to in this case, wouldn't any weakness in that instruction that you now raise as being insufficient, be considered invited error? No, because the problem is not necessarily the curative instruction, which told the jury, basically, you don't- The initial instruction said you can only consider this evidence for a limited purpose, consciousness of guilt. What the state ended up using it for was to suggest that Monica- It was supposed to go to the defendant's state of mind, but instead, the prosecution used it to show Monica's state of mind, show that she believed something was going on between the defendant and KH, and that she confirmed her suspicions when she took KH to the hospital. So, it's not so much that the instruction was invited error, it's the problem is the prosecution made use of this evidence in the way it introduced it for an improper purpose. But if it isn't invited error, shouldn't it be considered waived since defense counsel never alleged any inefficiency or insignificance of that instruction before the trial court? The error, I believe, is not so much whether the curative instruction was insufficient, but the defense attorney should have objected to the closing arguments by the prosecution. That was going to be my next question, and he did not. He did not, no. And I don't know- Was he raised in post-trial motion? He filed a post-trial motion, but by that time, I assume he didn't have transcripts, so he didn't- So, he didn't raise it there either. He didn't raise it there either, no. But yeah, which is why we're asking that it be considered as plain error. And I'd just like to go through a couple of the prosecutor's arguments. One of the things the prosecutor said in the initial closing was, we heard from KH's mom, Monica. She told you she'd been noticing this defendant was being alone with KH. She would walk into the room, and he would leave really quick, and it was weird. And ultimately, in January, she found them alone in the bathroom together, and he left, and it was weird. And she ended up confronting him about it. This supports KH. And then again, in the rebuttal, the prosecutor said, defense counsel says there was no corroboration. I submit to you there was. We had the testimony of Monica. Monica testified about the awkward encounter of them coming out of the bathroom. So, the problem is that, I guess in combination, the curative error told the jury, you don't need to consider this evidence for a limited purpose. And then the prosecution told the jury, consider it for purposes of corroborating KH, because Monica believed that something was going on between the two of them. But Ms. Galnick. Yes. Hadn't they heard the jury, hadn't the jury heard the evidence about her walking in and finding what she thought maybe were compromising or weird circumstances, and seeing them come out of the bathroom that day. Those were testified to before in her testimony, correct? They didn't relate to the actual building construction. I believe the only thing she testified to with respect to the bathroom incident was she saw them walk out of the bathroom together. She never said anything about seeing any kind of inappropriate conduct, just that she had suspicions. And she thought that they acted, he acted that Mr. Abram acted weird, and that she thought it was odd, but she never testified to seeing any inappropriate behavior. In fact, yeah. But that testimony that you're alluding to that was then referred to in closing argument came before that limiting instruction, maybe not, maybe not all of it, the coming out of the bathroom came, I think, after the limiting instruction. But no, the judge will give the limiting instruction immediately before Monica testified. Okay. So it was before any of her testimony. And what she, what she ended up testifying to was essentially that she saw Mr. Abram and Cage coming out of the bathroom, she confronted him, and they argued, and then she took Cage to the hospital. That was the extent of her testimony relating to that, that incident. So in effect, what what that also did was to suggest, as Your Honor is somewhat pointing out, suggest that she did see something happening when she never testified to that. And that the trip to the hospital wasn't related to anything relating to Monica. But it was related to Monica believing that her daughter was being sexually assaulted, which was confirmed at the hospital. So the state made other use of it to to kind of suggest that, as I said, it went to Monica's state of mind and not the defendant's state of mind. I'm sorry, Justice Hudson. Well, I just wanted to refer to one other thing, Chief. Justice Bridges, Justice Hudson and I are familiar with another case involving Mr. Abram and this particular event. She was going to the She wasn't going to take her daughter, isn't that correct? And in fact, that is why. And actually, I'm familiar with that because I was the supervisor on the other case. In fact, she went to the hospital a couple days after the incident. I don't know that that came across to the jury in this case, because her ankle was still hurting. I don't think her, I think Cage accompanied her just because she accompanied her mother to the with any suspicions of Monica or allegations of abuse. That's that's what I want to clarify, Justice Bridges. Thank you, counsel. The limiting instruction given by the trial court in this case involved conduct that was not charged when it was to be received on the issue of the defendant's uh, because she saw something that was inappropriate between K.H. and the defendant satisfied the need for this instruction. I don't I don't think she ever testified she saw something inappropriate, so I want to clarify. That's my word, but she testified about what? She said she thought it was odd that that was her testimony. But in fact, after the witness testified and Judge Wilt brought this up on his own, he said, Why didn't you introduce the evidence about what his Mr. Abrams response was? And she said, Well, I introduced all the evidence except for the push and the ankle. In fact, the push was what the judge found made that evidence relevant. That was what went to consciousness of guilt. None of the other related to that issue. But counsel, she also further testified the defendant had hurried out of the bathroom like he was doing something. She testified it was odd because K.H. wouldn't need help in the bathroom. And so my question is about the issue of conduct, because there's your objection is about that instruction. And my question is, doesn't this satisfy the need for that instruction? Because it talks about uncharged conduct. Are you talking about the limited instruction that was? That's right. The limiting instruction told the jury the evidence you're about to hear regarding the other conduct can only be considered as evidence of consciousness of guilt. But what was relevant to the issue of consciousness of guilt was the defendant's reaction to Monica's in her own head or not her speculation or not innuendos created by her testimony. So, yeah, the limiting instruction would have been appropriate and was was necessary. Had the state introduced the evidence it told the judge it was going to introduce. And I think it's fair to say that the prosecutor didn't act in good faith either. When when Judge confronted the prosecutors, why didn't you introduce this evidence? She said, well, I thought I could introduce the other evidence. But in fact, she had at the direction of Judge Will two days before the trial started, the prosecution had drafted an order relating to all the motions in limine. And in that order, the prosecution wrote down with respect to motion number seven, which was these prior bad acts against Monica, that that motion was granted over objection as to evidence of consciousness of guilt only. So the prosecutor knew that the evidence that was relevant was the defendant's reaction. And that's what the judge indicated to the prosecutor. It wasn't relevant just to show what Monica's beliefs were. The other thing is KH, she never testified that anything had happened on the day that her mother saw the two of them coming out of the bathroom. With respect to I believe she may have testified that some of the photographs that she alleged the defendant took, that those were taken in the bathroom, but at the age of when she was 13, which was a year or two beforehand. So there was no evidence in the record to support, it didn't corroborate KH's testimony of assault and these taken in the photographs. Because it didn't, there was no evidence that said that anything had happened that day. So it was used again, for the improper purpose of corroborating KH with these suspicions by her mother. Counsel, I apologize for interrupting you, but your time is up. So please complete your statement. Okay, thank you. Yeah, I guess I don't have a little light or anything. Your honors, for the reasons we've set forth in our briefs, and the reasons I've stated today, we're asking that Mr. Abrams convictions be reversed and that the cause be remanded for trial. Thank you. Justice Bridges, may I ask just one more question? Ms. Skelnick, I'm not going to be as delicate maybe as Justice Bridges was. A grown man is coming out of the bathroom with a 13-year-old, 14-year-old young woman. Mom is there. She confronts him and they argue. What are they arguing about? What's the door closed for? Why is the door open? What are you doing in the bathroom together? That would be conduct that probably wasn't charged because as you've already indicated, nothing happened. Nothing's alleged to have happened on that day. So could that be the conduct that shows consciousness of guilt that they argued? Not just she screamed, but they argued. I don't believe so because what Judge Wilt found was that what was relevant was not that he argued with her, but that in response to her accusations, he pushed her down. I mean, if the argument was, what are you talking about? I didn't do anything. We don't know what the nature of the argument was. What was relevant and what Judge Wilt found was the push, which the state purposely failed to introduce. All right. Thank you. Thank you. Justice Hudson, any additional questions? I have no additional questions at this time. Thank you. Thank you. Thank you, counsel. At the end of Appleby's argument, you will have an opportunity for rebuttal. Thank you. At this time, Mr. Jacobs, you may begin your argument. Thank you. Good morning. I'm Barry Jacobs, representative of the people of Illinois as Appleby in this case. May it please the court and counsel, I'll also address the second issue because the first one just wasn't addressed. First, Ellie, please. As your honors all observed, defense counsel in this case did not object to this instruction that was given. And for that reason, that issue, the sufficiency of that instruction really has been waived by his affirmative acquiescence to the court's course of conduct in issuing that instruction. The defense presents an argument that the prosecutor's misconduct in kind of cautiously examining Monica Braylock about this incident, which incidentally Judge Wilk found could be relevant to show what the sequence of events was after. Well, when Monica saw this grown man and her 13-year-old in the bathroom, what the sequence of events was leading up to the outcry, because what happened was when they did go to the hospital, K.H., the complainant witness, made her outcry statements to a, passed a note to a police officer who was present. So Judge Wilk did find that there was another relevant purpose for Monica Braylock's testimony about this. The prosecutor did offer a reason for her reluctance to examine about the push, saying that she simply didn't want to relitigate the domestic battery charge and didn't want to open the door to Monica Braylock testifying about an injury, which was prohibited by the order in limine. This limiting instruction that was issued and didn't apply only to the state's examination of Monica Braylock, it also protected the defendant during cross-examination by his own counsel. There's no way this prosecutor could have known if Monica Braylock may have opened the door or actually talked about this injury, which was the issue that I think counsel's raising is that this was prosecutorial misconduct, which would indicate a deliberate action on behalf of the state. Yes. And couldn't the state have talked with Ms. Braylock in anticipation of her testimony and told her, don't talk about this, don't talk about this, don't talk about this, as you would any witness that you call to make sure that he or she abides by the court's orders? Presumably the state did do that. My point is that the state couldn't prevent her from, in the heat of cross-examination, perhaps saying something. So the purpose of the limiting instruction was protective. The state's good to file a motion to eliminate to present this evidence and was cautious about doing that, rather than just trying to present it in a trial without some sort of order of previous order by the court. Jack, if I can interject a question, I don't know if it's clear from the record. So the state obviously approached the court, the state wanted a limiting instruction. Why didn't the state follow up and introduce the evidence? According to the prosecutor, it was because she did not want to relitigate the domestic battery charge and she feared opening the door or allowing Monica Braylock to perhaps talk about the actual injury. The court's ruling was that the state could, initially the ruling in limine was that the state could elicit evidence about the sequence of events leading up to the visit to the hospital where KH made her outcry. At trial, it was limited to the consciousness of guilt or as it showed the consciousness of guilt. But the state indicated that its reasoning was that it did not want to open the door to Monica Braylock, perhaps committing reversible error by talking about this injury that was that the state knew well before the limiting instruction was given that they didn't intend on presenting the very evidence that they had argued in their limine motion as to why they wanted it introduced. Why isn't this prosecutorial misconduct? As I said, the state offered that she was not clear that it included up to the push and she that Monica Braylock would during cross or redirect speak about this injury. Excuse me, counsel, but didn't she, isn't that exactly what they told the court they would be introducing? So I understand they changed their position, but didn't they in fact say, judge, this is why we want this in. It's because we're going to introduce this evidence. Yes, she did. She did indicate that she wanted to introduce the evidence of the incident where Monica Braylock observed the adult defendant coming out of the bathroom with a 13 year old and how that led up to the hospitalization and ultimate outcry by the young girl. Uh, she didn't specifically say that she wanted to go to consciousness of guilt that I recall, but she may have, the court did rule that it was relevant for both of those dual purposes. And counsel, the limiting instruction that was given by the court simply instructed the jury to disregard the limiting instruction in itself. Since no such evidence was presented uh, is why the court said that, but wasn't, uh, there's still a problem since the jury was not told not to consider the trial court's inference that other crime evidence might exist, uh, that they, uh, could not use in determining the defendant's guilt. This was kind of left out there, correct? To some extent, although the current instruction was very clear that Monica had not testified that the defendant had engaged in any bad acts. So it was clear that there was no evidence, at least during Monica Braylock's testimony presented, uh, because the current instruction said so. I mean, it was very clear, uh, there wasn't really not a lot to speculate about, um, left for this, for this jury. Either way had, had the prosecutor, um, elicited that a push resulted in Monica Braylock going to the hospital or just leaving a blank. The speculation that the jury might engage in is, is basically the same, wondering why, but certainly it's clear that what the court, the current instruction said, Monica Braylock has not talked, has not said that this coming out of the bathroom was a prior bad act. Monica Braylock, you know, that testimony, uh, was, was not a bad act. So it doesn't, it, I don't believe that the argument that, uh, it allowed the curative instruction allowed the jury to speculate without bounds is apt here. Uh, there were limitations, uh, that it could only be considered, this is through the limiting instruction, only be considered on the consciousness of guilt. But when the court gave the curative instruction and said there are no bad acts to consider the defendant's consciousness of guilt, Monica, Monica's reaction, you know, is what it was. Interestingly, uh, Justice Hutchinson asked about would the argument be evidence of, uh, of a prior bad act? It certainly is a stretch to say that, but it does show the defendant's reaction to being confronted, uh, by Monica Braylock, uh, and, and that was clearly, uh, within the bounds of the limited instruction. So, again, this claim of prosecutorial misconduct, what the defense is essentially arguing is, uh, cautionary, uh, approach to questioning Monica Braylock so as not to violate the order and eliminate, um, is akin to not presenting promised evidence as in, uh, uh, the Bunning case. And, and that's, that's, that's just not, uh, a fair representation of what the prosecutor said or, uh, what the effect was. Uh, in this case, there's simply not an, a clear and obvious error that would excuse counsel's failure to raise this in the trial court. Um, plainer doesn't apply to the misconduct by the prosecutor and plainer is, is, is not appropriate in, uh, in evaluating, or the plainer doctrine is not appropriate in evaluating the, um, defendant's deficiency of this curative instruction because counsel simply, uh, agreed to it and never raised the issue again. Counsel, if I might move away from the instruction and ask now regarding a relevance issue, uh, regarding the relevance of KH having taken the nude photographs of herself with defendant's phone, wouldn't this explain, uh, why nude pictures, uh, were found on the phone and wouldn't KH's testimony have corroborated the defendant's testimony, uh, that he didn't know the pictures were on his phone? Well, to be clear that the, uh, proffered evidence that was limited by the court, the, the, um, the evidence that, that defense counsel asked to, uh, examine, um, KH about on cross-examination was, was not, um, a challenge to her statements that she took the photos because she actually testified that she did take four of the six photos found on defendant's phone. And she also testified that she wasn't aware, uh, whether or not he knew about those four photos on his phone. But the, the testimony that defense counsel proffered as, as being relevant was, um, a question about whether, well, asking KH why or whom she took those photos. The proffer was that KH had taken the photos for, um, to send to a boy on Facebook. Uh, in terms of relevancy that, which was the first inquiry that the court really should have looked at, uh, the, the limited testimony that, or the excluded testimony, um, why and for whom that she was going to send them to a boy on Facebook, um, has no relevance to any of the charges, any element of any of the charges. Uh, it had no relevance to, uh, specifically the charge of child pornography on, on the issue of defendant's knowledge. KH had already testified that she um, they certainly weren't, uh, relevant for, to cross-examine her. Again, she didn't deny that she took four of those photos, uh, and she didn't know. So the, the only reason that, uh, counsel may have wanted these, well, did want these to be admitted was to sully, uh, KH in front of the jury by painting her as, uh, to paint her as a, um, you know, flirtatious online sexter trafficking in, in child porn herself. Um, and, and I do believe that falls within the definition of sexual activity that the racial statute, um, seeks to prevent. Uh, there, this simply wasn't constitutionally required, uh, under the racial statute that, um, that this excluded testimony come in because it wasn't directly relevant to any issue, uh, that was before the court in controversy. Should I speak further about the argument? Well, let me just be a Mr. Jacobs. I do have one. The, the issue wasn't necessarily the charge, not the issue. The charge was not, uh, that Mr. Abrams produced or manufactured this, but that he possessed it, correct? Correct. And so who took the picture is not really relevant. And even why it was taken would not be relevant, would it? Correct. Uh, you know, the case that, that, uh, that cites the Mason case in that case, a seven-year-old child, um, there was, I believe it was a sexual, uh, criminal sexual assault case. That child was seven years old and displayed a knowledge of, um, sex acts. Uh, the state in that case produced an expert testimony that, uh, you know, uncharacteristic, uncharacteristic knowledge of, of, uh, sexual conduct, um, at that early age could be indicative of abuse. Uh, the defense attempted to refute that, uh, with testimony that that seven-year-old child had come, had acted, had watched, um, pornographic videos. And that could account for the knowledge of, of sex, uh, that was found to be air. But again, even in that case, the, the, the salacious details of why that child watched or with whom or for whom, whoever it could be, those were not, uh, those details were not admissible. It was the act, uh, of watching the dotas because it explained an issue in controversy. And, and that's simply not present here. Counsel, uh, I apologize for interrupting, but your time is up. Um, so, uh, do either of the justices have any additional questions? I do not. I do not. Thank you. Thank you. People would just ask the court to affirm the defendant's convictions for predatory criminal sexual assault, criminal sexual assault, uh, as well as child pornography. Thank you. Thank you, Mr. Dick. Uh, you may proceed with your rebuttal. Thank you, your honor. Uh, Mr. Jacobs is with respect to the prosecutorial misconduct issue. It seems that Mr. Jacobs is trying to offer excuses or reasoning for the trial prosecutor's conduct that is not borne out by the record. It's contradicted by the record. He says that she was taking a cautionary approach to questioning Monica and the prosecutor told judge wilt. Oh, I, I didn't realize that I couldn't introduce all the evidence up to the push. Um, and in fact, judge wilt called around that. And, and if you look at the ruling on the motion in limine, he specifically says what I think is relevant on the issue of consciousness of guilt is the defendant's reaction to the confrontation by Monica, not the fact that they argue, not the fact that she took her daughter to the hospital, the way that the evidence came out, in fact, and, and I, I understand, I understand why the prosecutor may have chosen ultimately not to introduce the evidence about the push, because there was an issue as to whether Monica had injured herself or whether the defendant had caused the injury. So the judge told the prosecutor, I'm not going to let you say that he broke her then the prosecution shouldn't have brought the evidence out at all. It's true that the state can introduce evidence that the, um, complainant made an outcry, but the way that they use the evidence at the trial by putting it only up to a certain point, the evidence relating to the incident, the way that that came out to the jury was that Monica thought something was going on. Monica believed her daughter was being hospitalized for that reason. So it made further improper use of the evidence. And I don't think it can be inferred that the prosecution did this for a legitimate purpose. She knew that what was relevant was the push. And she purposely chose not to include that, that evidence. Michelle, let me ask. So your message, you're saying notwithstanding the curative instruction given at the behest of defense counsel, other things developed that were not going to be carried by this curative instruction. Is that? Yes, I think that's correct. Yes. And, and again, I'd like to go a little bit into the defense attorney did not object. He should have objected, but I don't know what got past him. Maybe he believed the curative instruction was sufficient and just overlooked the, but, but I, this is a closely balanced case. And I would point out, you know, this is basically a, it's a, he said, she said case defendant himself testified, denied any improper conduct. There was no physical evidence that was presented to corroborate Kate's claims. Her testimony was that these incidents of sexual assault took place in her home in her, in, I guess, Monica and the defendant's bedroom while her mother was present, her brother and stepbrothers were present yet. Nobody testified to hearing or seeing anything any kind of improper behavior other than the innuendos raised by Monica's testimony. KH also testified that the defendant would sometimes give her marijuana to relax her, but there was no testimony that anybody ever smelled burning cannabis in the home. So again, it comes down to a question of credibility between KH and Mr. Abram. Ms. Kelley, before you adjourn your rebuttal argument, I do have a question about the alleged improper restriction on cross-examination on the photograph. And the question is that I have is how does the issue of what KH intended to do with the photograph beyond possessing the photograph and beyond being cross-examined on how it got on to the defendant's phone, what does what she intended to subsequently do with the photograph have to do with the defendant, the charge of knowingly possessing child pornography? Well, it shows, first of all, that she took these photos for a reason that had nothing to do with the defendant. Whether and whether he knew about it, I think the fact that she took them for a separate purpose and that they were on his, they were on his phone, but did he know they were on his phone, the fact that he wasn't involved in taking those corroborates his claim that he didn't know. But it was brought out in front of the jury that the photographs, she was, they were authorized to ask her whether or not the photographs were taken at the behest of the defendant, correct? Correct. Okay, and so when that's answered, what difference does it make what she's going to do with the photographs after that? I think it corroborates his testimony that he had no idea they were on there and that he didn't take any photographs of her. It impeaches her and corroborates him. If she took these photographs for a purpose separate from him, maybe she took the other two photographs herself and he didn't take them. There's also, there were 5,000 pages of documents taken off of this phone, so the fact that she didn't, that he didn't take those and that she took them for a different reason, again, I think it corroborates his testimony that I had no idea they were on there, I had no involvement in taking them. So I think it was relevant for those purposes. It's, it explains the presence of evidence, which is the photographs themselves, and for reasons that didn't involve the defendant. So it's not only impeaching, but a corroborative of his testimony on that front. Ms. Skelnick, I want to go back to your issue of, it's just not that the state didn't present the actual push evidence, but then in closing argument, they, they argued about certain things that maybe were not properly before the court. Where in your brief do you discuss the argument issue? I'm just... In the, in response to in the state's brief, the state said that the idea that the jury considered this for improper purposes is speculation. And in my reply brief, I pointed out that it wasn't speculation because the prosecution specifically used this testimony for that purpose. So I do have some citations to the closing arguments in the reply brief. All right, but you only did that in response to Mr. Jacob's argument that it was speculative to say that the jury was considering it for an The instruction that... Yes, am I out of time? I'll let you finish that statement. Your time. Thank you. I was just going to say with respect to the curative instruction, told the jury, I told you, you could only consider this evidence for a limited purpose, forget that. So basically the judge was saying, you don't have to limit your consideration of this evidence. And I think that's what made it a more egregious error because of the way it was ultimately used. Thank you, counsel. Does either of the justices have any additional questions? I do not. No, thank you. And nor do I. The court thanks both parties for their arguments this morning. This, the case will be taken under advisement and a disposition will be rendered in due course. Mr. Clerk, you may terminate these proceedings. Thank you. I will again initiate.